**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**KEVIN OWENS,**
**Claimant Below, Petitioner**

**vs.)   No. 20-0664** (BOR Appeal No. 2055055)
                    (Claim No. 2019006511)

**BUNDY AUGER MINING, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Kevin Owens, by Counsel Lori J. Withrow, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Bundy Auger Mining, Inc., by Counsel Lisa Warner Hunter, filed a timely response.

The issues on appeal are additional compensable conditions and medical benefits. The claims administrator denied treatment for the thoracic spine on April 18, 2019. On April 24, 2019, the claims administrator denied the addition of lumbosacral radiculopathy, thoracic pain, cervicothoracic radiculopathy, and muscle spasms to the claim. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its January 17, 2020, Order. The Order was affirmed by the Board of Review on July 30, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the

1

Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Owens, an electrician and coal miner, was injured when a beam jostled a platform he was standing on and jarred his whole body on September 6, 2018. He sought treatment the following day from Rhonda Guy, M.D. Mr. Owens reported that following his injury, he instantly felt pain in his back that radiated to his legs and feet. Dr. Guy diagnosed lumbosacral radiculopathy, low back pain, and muscle spasm. Lumbar x-rays performed on September 11, 2018, showed multilevel lumbar degenerative disc and degenerative joint disease but no acute fracture.

Mr. Owens returned to Dr. Guy on September 14, 2018, and was placed on restricted duty due to his low back conditions. The Employees' and Physicians' Report of Injury was completed that day and indicates Mr. Owens injured his back, legs, and arm on September 5, 2018. The diagnoses were listed as lumbosacral radiculopathy and muscle spasm. On September 19, 2018, Mr. Owens was seen by Dr. Guy and reported neck, upper back, and lower back pain. He was diagnosed with lumbosacral radiculopathy, low back pain, muscle spasm, cervicalgia, cervicothoracic pain, thoracic pain, headaches, and insomnia. The claim was held compensable for lumbar sprain on September 19, 2018.

A lumbar MRI was performed on October 25, 2018, and showed severe spinal stenosis at L4-5 with bilateral foraminal encroachment, worse on the left; moderate stenosis at L5-S1 with foraminal encroachment, worse on the right; degenerative disc disease with bulging at L3-4; and degenerative disc and joint disease at T10-11 and T11-12. In a November 29, 2018, treatment note, Dr. Guy wrote that Mr. Owens reported cervical, thoracic, and lumbar pain that radiated into his arms and legs. The diagnoses were lumbosacral strain, cervical sprain, thoracic sprain, and insomnia. Mr. Owens was to remain off of work.

Mr. Owens was evaluated by John Schmidt, M.D., on December 3, 2018, and he reported low back and bilateral leg pain. He had not returned to work since his accident. Dr. Schmidt diagnosed lower back strain, lumbar spondylosis, and lumbar stenosis with neurogenic claudication. On December 11, 2018, Mr. Owens returned to Dr. Guy and was diagnosed with lumbosacral strain, acute cervical sprain, and thoracic sprain. He was to remain off of work. Left L5 transforaminal epidural steroid injections as well as lumbar spine x-rays were authorized by the claims administrator on December 11, 2018.

On December 28, 2018, Mr. Owens returned to Dr. Guy and reported continued neck and thoracic spine pain that radiated into his arms. He also reported pain in his legs. The diagnoses remained the same, and Mr. Owens was to remain off of work. Cervical spine x-rays were performed on January 24, 2019, and showed narrowing from C3-4 to C6-7 with encroachment at those levels by small osteophytes. There were no acute fractures. Thoracic spine x-rays showed multilevel degenerative changes in the mid to lower thoracic spine. The radiologist noted that the findings were likely chronic but recommended an MRI to check for acute findings.

Dr. Guy noted in a January 28, 2019, treatment note that Mr. Owens had no relief from lumbar spine injections. Mr. Owens reported continued neck and thoracic spine pain that radiated into his arms. Dr. Guy diagnosed lumbosacral strain, cervical sprain, thoracic back sprain, back muscle spasms, lumbar radiculopathy, and cervical radiculopathy.

A. E. Landis, M.D., performed an Independent Medical Evaluation on February 12, 2019, in which he determined that Mr. Owens sustained a work-related moderate soft tissue injury superimposed on preexisting, advanced degenerative disc disease. Dr. Landis opined that Mr. Owens's back pain was the result of an aggravation of the preexisting condition. Mr. Owens had not reached maximum medical improvement. Dr. Landis recommended an exercise program and medication. Surgery was not recommended.

A February 18, 2019, thoracic spine MRI showed disc protrusions at T7-8 and T8-9; mild left foraminal narrowing at T2-3, T9-10, and T10-11; and mild neural foraminal encroachment at T3-4. In a February 21, 2019, addendum to his report, Dr. Landis stated that he reviewed Mr. Owens's thoracic MRI, and he opined that the findings were all degenerative in nature. The claims administrator denied a request for thoracic spine physical therapy on March 12, 2019.

Dr. Guy completed a Diagnosis Update on April 11, 2019, in which she requested the addition of lumbosacral radiculopathy, thoracic spine pain, cervicothoracic radiculopathy, and muscle spasms to the claim. The claims administrator denied treatment for the thoracic spine on April 18, 2019. On April 24, 2019, the claims administrator denied the addition of lumbosacral radiculopathy, thoracic pain, cervicothoracic radiculopathy, and muscle spasms to the claim.

In a June 6, 2019, Independent Medical Evaluation, David Soulsby, M.D., diagnosed lumbar sprain/strain, severe degenerative disc disease, and spinal stenosis. Dr. Soulsby stated that Mr. Owens's stenosis was severe and preexisted the compensable injury. He opined that the radiculopathy was the result of the stenosis. Dr. Soulsby reviewed the radiographic findings and stated that they showed a pronounced L5-S1 disc bulge without evidence of significant herniation. He also stated that Mr. Owens has degenerative disc disease in the cervical and thoracic spines with disc protrusions at several levels. Dr. Soulsby found no evidence of acute spinal injuries and opined that no further treatment was necessary for the compensable injury. He assessed 8% lumbar spine impairment and apportioned half to preexisting degenerative disc disease.

Dr. Guy opined on August 6, 2019, that Mr. Owens's cervical pain with muscle spasms, thoracic pain, and lumbar pain with herniated disc were all the result of the compensable injury.

3

She stated that the underlying degenerative changes were asymptomatic until the compensable injury.

The Office of Judges affirmed the claims administrator's decisions denying thoracic spine treatment and denying the addition of lumbosacral radiculopathy, thoracic pain, cervicothoracic radiculopathy, and muscle spasms to the claim in its January 17, 2020, Order. The Office of Judges began by noting that thoracic spine pain and muscle spasms are symptoms, not diagnoses, and were therefore correctly denied as additional conditions in the claim. The Office of Judges next determined that lumbar radiculopathy should not be added to the claim. It noted that Mr. Owens's initial lumbar x-ray showed advanced multilevel degenerative disc changes in the lower three lumbar levels. Further, Mr. Owens has severe spinal stenosis from L4-S1, as seen on the October 25, 2018 MRI. The Office of Judges noted that Dr. Soulsby, an orthopedic surgeon, concluded that Mr. Owens's radiculopathy is the result of spinal stenosis. The Office of Judges found his opinion to be reliable. Regarding cervicothoracic radiculopathy, the Office of Judges found that there are no compensable thoracic or cervical spine injuries in the claim. A thoracic MRI was taken but showed only degenerative findings. Further, Mr. Owens did not initially report a cervical or thoracic spine injury and did not complain of cervical or thoracic spine pain until thirteen days after the compensable injury occurred. Finally, the Office of Judges affirmed the denial of thoracic spine treatment because there are no compensable thoracic spine conditions in the claim. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 30, 2020.

After review, we reverse and remand the case for further development of the evidentiary record and analysis under *Moore v. ICG Tygart Valley, Inc.*, No. 20-0028, ___ W. Va. ___, ___ S.E.2d ___, 2022 WL 1262269 (W. Va. Apr. 28, 2022)*. Mr. Owens requests the addition of lumbosacral radiculopathy, thoracic pain, cervicothoracic radiculopathy, and muscle spasms to the claim. Thoracic pain and muscle spasms are symptoms, not diagnoses, and therefore cannot be added to the claim. Regarding cervicothoracic and lumbosacral radiculopathy, a preponderance of the evidence indicates that the conditions preexisted the compensable injury. In Syllabus Point 5 of *Moore*, this Court stated that

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

The evidence in this case indicates that Mr. Owen's current symptoms are largely the result of preexisting degenerative conditions. It must still be determined, however, if his preexisting conditions were asymptomatic prior to the compensable injury.

West Virginia Code § 23-5-8a(a) provides that

4

[t]he Workers' Compensation Office of Administrative Law Judges, referred to as the Office of Judges, shall terminate on or before October 1, 2022, as provided in §23-5-8b of this code. All powers and duties of the Office of Judges to review objections, protests, or any other matter authorized by this chapter, shall be transferred to the Workers' Compensation Board of Review on July 1, 2022: *Provided*, That any objection or other matter filed pursuant to this chapter and pending before the Office of Judges upon its termination, in which a final decision has not been issued, shall also be transferred to the Workers' Compensation Board of Review as provided in §23-5-8b of this code.

We therefore reverse and remand the case to the Board of Review for further development of the evidentiary record and analysis under *Moore*.

Reversed and Remanded.

**ISSUED: October 18, 2022**


**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice William R. Wooton


WOOTON, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's reversal of the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"), and further with its conclusion that resolution of the merits of this case is controlled by our recent decision in *Moore v. ICG Tygart Valley, Inc.*, No. 20-0028, __ W. Va. __, __ S.E.2d __, 2022 WL 1262269 (W. Va. Apr. 28, 2022). However, I part company with the majority's remand of the case for further development of the evidentiary record as to whether Petitioner's preexisting conditions were asymptomatic prior to the compensable injury.

As is the case with many aging workers who have performed physical labor for decades, Petitioner suffers from certain degenerative physical conditions, including multi-level degenerative changes in the mid to lower thoracic spine, stenosis, and a pronounced L5-S1 disc bulge. However, Petitioner testified, and his treating physician confirmed, that none of these degenerative conditions had ever been symptomatic prior to September 6, 2018, the date of the work-related injury. Significantly, there is no evidence in the record to refute this critical fact;

indeed, even Dr. Landis, who examined Petitioner and performed a record review on behalf of the employer, opined that "Petitioner's back pain appears legitimate and related to *aggravation* of his preexisting condition." (Emphasis added).[1]

In *Moore*, where the evidence of record was also undisputed that the petitioner's preexisting conditions had been asymptomatic prior to his work-related accident, this Court did not remand in order to give the employer another bite of the evidentiary apple; rather, we reversed with directions to add the condition at issue (cervical radiculopathy) to the claim. *See also Murray Am. Energy, Inc. v. Spry*, No. 17-0375, 2017 WL 6049273 (W. Va. Nov. 22, 2017) (memorandum decision):

> Petitioner testified that he did not suffer symptoms in his left shoulder prior to the April 22, 2016, injury, and *no evidence to the contrary has been submitted*. Although Dr. Ungar has opined that [petitioner's] pathology is related to his degenerative disease, no evidence has shown that symptoms were present prior to the injury sustained on April 22, 2016.

*Id*. at *2 (emphasis added).

Here, where Petitioner's injury was sustained on September 6, 2018, more than four years ago, the majority's "second bite" remand does nothing but add another year or more of delay to a case that has already taken far too long. In my view, faithful adherence to *Moore* demands that we reverse the Board of Review and remand with instructions that lumbosacral radiculopathy and cervicothoracic radiculopathy be added to Petitioner's claim.

Accordingly, I concur, in part, and respectfully dissent, in part.

---

[1]Although Dr. Soulsby, who performed an independent medical examination, opined that Petitioner's pain was "more likely than not" related solely to his pre-existing conditions – in short, that the occurrence of the work-related accident was a wholly irrelevant coincidence – there is not a scintilla of supporting evidence in the record to support such a conclusion.